IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Republic Contracting Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>Kissimmee Auction Company, Inc.,<br>and S. Michael Bruce, individually,<br><br>    Defendants.<br>_____ | Civil Action No. 2:19-cv-3339-BHH<br><br>**ORDER** |

  This matter is before the Court upon Plaintiff Republic Contracting Corporation's ("Plaintiff" or "Republic") motions to dismiss Defendant Kissimmee Auction Company, Inc.'s ("Defendant" or "Kissimmee") counterclaims for negligence and breach of the implied warranty of workmanlike performance.

**BACKGROUND**

  Republic filed this action against Kissimmee on November 26, 2019, alleging that the Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and asserting claims for breach of contract/default, unjust enrichment, and breach of the covenant of good faith and fair dealing. (ECF No. 1.) According to Plaintiff's complaint, Kissimmee was the owner of vessel SUN CRUZ VII, which was docked at Plaintiff's premises pursuant to a lease agreement executed by the parties on June 28, 2017, until the vessel was towed by a third party to Jacksonville, Florida, on September 10, 2019. Plaintiff alleges that the lease required Kissimmee to pay rent in the amount of $4,500.00 per month for three months ending on September 30, 2017, and that the lease thereafter allowed for month-to-month rental in the amount of $5,000.00 per month. According to

Plaintiff, it continuously stored the vessel until September 10, 2019, and it regularly submitted invoices and outstanding balance sheets to Kissimmee from July 20, 2017, until August 20, 2019.  Plaintiff alleges that Kissimmee received the invoices but only sparingly paid, and Plaintiff served notice on Kissimmee that it was in default for 21 months of unpaid rent.  Plaintiff alleges that Kissimmee owed $197,825.00 as of the final notice before the vessel was removed in September 2019.

Kissimmee filed an answer to Plaintiff's complaint and a counterclaim for negligence on January 6, 2020.  Republic moved to dismiss the counterclaim on January 27, 2020, on the basis that the claim is barred by the economic loss rule under general maritime law and because Republic did not Kissimmee a duty to provide security for the leased premises and is not responsible for criminal acts of third parties.  On February 10, 2020, Kissimmee amended its answer as a matter of course and included counterclaims for negligence and breach of the implied warranty of workmanlike performance.  Republic again moved to dismiss Kissimmee's amended answer and counterclaims on February 20, 2020.  In its second motion to dismiss, Kissimmee incorporates the arguments from its first motion to dismiss as to Plaintiff's negligence cause of action and argues in addition that Plaintiff fails to state a plausible claim for breach of the implied warranty of workmanlike performance because the implied warranty of workmanlike performance does not include preventing damages from third party criminal acts.

## **STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of a plaintiff's complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To survive a Rule 12(b)(6) motion,

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Supreme Court has explained that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 678.

## **DISCUSSION**

After review, the Court agrees with Republic that Kissimmee's counterclaims are legally insufficient. Leaving aside for a moment the more technical arguments made by Republic, the Court notes as an initial matter that Kissimmee's counterclaims are nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Twombly*, 550 U.S. at 678. For example, in its negligence counterclaim, Kissimmee simply alleges that "a wharfinger is subject to a duty to exercise reasonable care to provide safe facilities for vessels using its docks"; that Republic's "failure to provide any form of security at the premises" was negligent and breached its duty; and that "Kissimmee suffered damages in the form of physical damages to the Vessel . . . ." (ECF No. 16 ¶¶36-38.) Next, in its counterclaim for breach of the implied warranty

3

of workmanlike performance, Kissimmee simply alleges: that "[a]n implied term of the Lease Agreement was that Plaintiff would comply with a warranty of workmanlike performance in providing wharfage services to the Vessel"; that "Plaintiff's failure to provide reasonable security to the vessel, as alleged hereinabove, constituted a breach of the warranty of workmanlike service"; and that Kissimmee suffered damages as a result. (*Id.* ¶¶ 41-43.) Ultimately, these allegations are nothing more than conclusory statements and are utterly devoid of factual content from which the Court could infer that Republic is liable to Kissimmee. Thus, for that reason alone the Court finds Kissimmee's counterclaims subject to dismissal for failure to state a plausible claim.

Moreover, in considering the more technical arguments raised by Republic, the Court agrees that the economic loss rule under general maritime law bars contract actions couched as tort claims. Here, the parties had a contractual lease agreement, and their duties and obligations stem from the terms of that agreement. Furthermore, even if the economic loss rule does not bar Kissimmee's negligence claim, it does not appear that general maritime law or common law permit Kissimmee to recover based on Republic's alleged failure to provide security or to protect Kissimmee from the criminal acts of third parties.[1] As such, the Court agrees with Republic that Kissimmee has failed to state a plausible counterclaim for negligence.

Likewise, as to Kissimmee's counterclaim for breach of the implied warranty of

---

[1] As Republic points out in its first reply brief, none of the cases cited by Kissimmee involve a wharfinger's duty to provide safety measures relating to the criminal acts of third parties. Stated differently, this Court does not intend to extend the wharfinger's duty beyond that contemplated by existing case law. *See Smith v. Burnett*, 173 U.S. 430 (1899) (establishing the common law duty of a wharfinger, which "does not guarantee the safety of vessels coming to his wharves," but does bind the wharfinger to "exercise reasonable diligence in ascertaining the condition of the berths thereat, and if there is any dangerous obstruction to remove it, or to give due notice of its existence to vessels about to use the berths").

4

workmanlike performance, not only is Kissimmee's counterclaim completely devoid of sufficient factual matter to state a plausible claim (as explained above), but also, it does not appear that the warranty of workmanlike performance even applies to the lease at issue, which did not give Republic any control of the vessel or require Republic to undertake the types of services typically involved in cases involving the warranty of workmanlike performance.[2] *See Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1316 (11th Cir. 2003) (noting that the extent of a wharfinger's warranty of workmanlike service is "largely determined by the services undertaken by the wharfinger"). As such, the Court agrees with Republic that Kissimmee's counterclaim for breach of the implied warranty of workmanlike performance is subject to dismissal for failure to state a plausible claim.

## CONCLUSION

Based on the foregoing, it is ordered that Republic's motions to dismiss Kissimmee's counterclaims (ECF Nos. 15 and 20) are granted.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

September 30, 2020
Charleston, South Carolina

---

[2] Kissimmee cites the case of *Snyder v. Four Winds Sailboat Centre, Inc.*, 701 F.2d 251 (2d Cir. 1983), in support of both its counterclaims. As Republic points out, however, the court in *Snyder* found that the defendant owed a duty of ordinary and reasonable care *as a bailee* to provide some measure of security to protect a boat it stored because a bailment relationship existed between the parties and the defendant had exclusive control of the boat. Such is not the case here.

Moreover, the contract between Republic and Kissimmee gave Kissimmee access to a tract containing a boat slip for the dockage of a particular vessel; the contract was not one for services such as repair, stowage, towing, or the like, where Republic would have exercised some control of the vessel.